# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| LLOYD and DANIELLE NEAL, JAMES P. TROY, and DAVID M. SABATO and MITZI B. SABATO as trustees of SABATO DAVID M AND SABATO MITZI B 2017 REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>GREENFIELDS IRRIGATION DISTRICT, FORT SHAW IRRIGATION DISTRICT, UNITED STATES, and DOES A-E,<br><br>Defendants. | Cause No. CV-21-106-GF-BMM<br><br>ORDER |

## INTRODUCTION

Defendant Greenfields Irrigation District ("Greenfields") has filed a motion for summary judgment on Plaintiff James P. Troy's ("Troy") claims based upon the doctrine of laches. (Doc. 83.) Defendant Fort Shaw Irrigation District ("Fort Shaw") joined that motion. (Doc. 87.) Plaintiffs oppose the motion. (Doc. 92 at 2.) The Court held a hearing on the motion on April 4, 2024. (Doc. 114.)

## BACKGROUND

Greenfields entered a contract with the United States Bureau of Reclamation ("BOR") to perform operation and maintenance duties for the Sun River Project.

1

(Doc. 104, ¶ 1.) The Sun River Project uses various reservoirs including the Willow Creek Reservoir to store and deliver water for irrigation from the Sun River and its tributaries. (Doc. 34, ¶ 2.) The project diverts water from the Sun River Diversion Dam to the Willow Creek Reservoir using the Willow Creek Feeder Canal. (*Id.*, ¶¶ 2, 10.) Fort Shaw entered a settlement agreement with Greenfields in 2005 relating to the sharing of costs for the operation and construction of the Willow Creek Feeder Canal. (Doc. 113 at 15; Doc. 113-6.)

The first 7.5 miles of the Willow Creek Feeder Canal consists of a channel with engineered components and structures. (Doc. 104-1 at 7–8.) A natural channel starts at the end of the constructed channel and runs approximately 8.5 miles to the beginning of the Willow Creek Reservoir. (Doc. 104, ¶ 15; Doc. 104-1, at 4–5.) The natural channel crosses land owned by Plaintiffs Lloyd and Danielle Neal, Troy, and David M. Sabato and Mitzi B. Sabato as trustees of the Sabato David M and Sabato Mitzi B 2017 Revocable Trust (collectively "Plaintiffs").

Plaintiffs have brought this action against Greenfields and Fort Shaw alleging the following claims: (1) negligence, (2) public nuisance, (3) private nuisance, (4) trespass, (5) strict liability for abnormally dangerous activity, (6) wrongful occupation of real property, and (7) unjust enrichment. (Doc. 5 at 10–18.) Plaintiffs contend that the Defendants have failed to reasonably maintain and operate the Willow Creek Feeder Canal. (*Id.*, ¶ 21.) Plaintiffs further contend that the

Defendants' failures have caused both erosion of the Plaintiffs' properties and a build-up of silt and sediment on the Plaintiffs' properties. (*Id.*) Plaintiffs seek damages for loss of enjoyment, diminution of value, and restoration of their real property. (*Id.*, ¶ 61.) The Court, upon motion of the parties, joined the United States as a necessary defendant because of the relationship between BOR, Greenfields, and Fort Shaw. (Doc. 44 at 3–4.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

## DISCUSSION

Greenfields and Fort Shaw argue that the doctrine of laches should bar Troy's claims. Greenfields and Fort Shaw contend that Troy knew about the basis for these claims as early as the 1970s and chose not to take legal action. (Doc. 84 at 7–8.) Greenfields and Fort Shaw allege that this delay has prejudiced Greenfields and Fort Shaw because of the drastic increase in the cost of remediation and the value of the property allegedly harmed. (*Id.* at 9–10.) Greenfields further argue that Troy's delay

3

has left Greenfields unable to locate prior insurance carriers. This inability to locate carriers has prevented Greenfields from tendering the claims under prior insurance coverage agreements. (Doc. 128 at 2.)

Troy argues that the doctrine of laches should not be applied where, as in his case, Defendants' conduct represents a continuing and ongoing tort. (Doc. 92 at 2.) Troy argues that new erosion and new sediment deposits occur every time Greenfields allows water to flow through the Willow Creek Feeder Canal. (*Id.* at 11–12.) Troy contends that the doctrine of laches exists to discourage stale claims. (*Id.* at 4.) Troy argues that his claims are not stale because they concern continuing, ongoing torts. (*Id.* at 16–17.)

## I. Whether the doctrine of laches applies to continuing torts

A district court exercising supplemental jurisdiction must apply substantive state law to the state law claims. *Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056 (9th Cir. 2011). A Montana state district court previously has refused to apply the doctrine of laches to a "continuing nuisance." *King v. Van Setten*, 2002 ML 4223, at \*32 (Mont. Dist. Ct. Oct. 23, 2002). A neighbor in *King* was discharging water into a coulee on the claimant's property. *Id.*, at \*14. The discharge of water onto the claimant's property caused soil instability and erosion of the banks in the creek and coulee located on the claimant's property. *Id.*, at \*16–19. The claimant waited over twenty years before filing suit. *Id.*, at \*14. The

Montana state district court determined that "[t]he flow of water is a continuing nuisance and the doctrine of laches has no application." *Id.*, at *31. The Montana Supreme Court has not addressed directly the question of whether the doctrine of laches should apply to claims for continuing torts. A review of the Montana Supreme Court's decisions relating to laches and continuing torts, however, proves instructive.

The Montana Supreme Court has reviewed several cases involving continuing trespass and continuing nuisance on a landowner's property. Property owners in *Blasdel v. Montana Power Co.* brought a claim for inverse condemnation where the installation of a dam on Flathead Lake caused flooding to their property. 640 P.2d 889, 891 (Mont. 1982). The defendant argued that the statute of limitations barred the claim because the claimants had first noticed the damage in 1941 but waited until 1960 to sue. *Id.* at 893. The Montana Supreme Court rejected this argument. *Id.* at 894. The Montana Supreme Court noted that the water table fluctuated until 1959-1960 such that the claimants could not reasonably ascertain the damages that they would suffer from the installation of the dam. *Id.* at 893–94. The Montana Supreme Court determined that the claimants' cause of action only accrued once the damages stabilized in 1960, meaning the statute of limitations had not expired. *Id.* at 894.

The Montana Supreme Court has addressed this "continuing tort" doctrine in several other cases. *Burley v. Burlington Northern & Santa Fe Ry. Co.* concerned a

5

railroad operation that released hydrocarbons and toxins that had contaminated the groundwater and soil of neighboring properties. 273 P.3d 825, 827 (Mont. 2012). Operation of the railyard had ceased approximately twenty years before the neighboring property owners filed suit. *Id.* The railyard operator argued that the statute of limitations barred the suit. *Id.* The Montana Supreme Court determined that the continuing tort doctrine could apply even though the railyard operator had not added pollutants to the environment for nearly twenty years. *Id.* at 835. The Montana Supreme Court emphasized that the continuing tort doctrine applies to "toll the statute of limitations until the harm no longer reasonably can be abated." *Id.* at 844.

*Knight v. Missoula* involved a local government's construction and maintenance of a dirt road next to the claimant's property that caused increased traffic, noise, and dust. 827 P.2d 1270, 1272–73 (Mont. 1992). The claimant had complained of those same problems at the time of construction but waited approximately 27 years after the construction of the road to file suit. *Id.* at 1277. The Montana Supreme Court concluded that the continuing nature of the nuisance tolled the statute of limitations. *Id.* at 1278. *Shors v. Branch* involved the installation of a metal gate across a road used for river access. 720 P.2d 239, 242–43 (Mont. 1986). The installer of the gate argued that the statute of limitations barred the suit because the claimant waited nearly six years after installation of the gate to bring their suit.

6

*Id.* at 243. The Montana Supreme Court recognized that "blockage of plaintiffs' access to the river by the gate was a continuing tort, because it was easily abated." *Id.* at 243–44. The Court determined that the statute of limitations did not bar recovery. *Id.* at 244.

The Montana Supreme Court has characterized recurring invasions of water as a continuing tort. *Haugen Trust v. Warner* involved flooding of the claimants' home caused by ponds built in a subdivision. 665 P.2d 1132, 1134 (Mont. 1983). The developer of the subdivision argued that the statute of limitations barred the claims. *Id.* The Montana Supreme Court disagreed. *Id.* at 1135. The Montana Supreme Court reasoned that the basement "continues to periodically flood," that "[t]he extent of the damages to the basement varies from occurrence to occurrence," and that the flooding proved abatable. *Id.*

Greenfields argues that the continuing tort doctrine only applies to statutes of limitations and does not bar the application of laches. The Montana Supreme Court has determined that "[l]aches, considered as a bar independent of the statute of limitations, is a concept of equity." *Riley v. Blacker* 152 P. 758, 759 (Mont. 1915). Greenfields also notes that the Montana Supreme Court has affirmed a district court's grant of summary judgment on a breach of contract claim on the basis of laches where the statute of limitations had not yet run. *Shimsky v. Valley Credit*

*Union*, 676 P.2d 1308, 1311 (Mont. 1984). Importantly, neither of those situations involved a continuing tort.

*Riley* involved a claim brought by an alleged mortgagor in which the mortgagor sought to have a warranty deed declared a mortgage rather than a conveyance of property. 152 P. at 758. The alleged mortgagor had waited approximately three years and eight months after paying off the alleged mortgage before bringing a claim. *Id.* at 759. The property had been administered as part of the alleged mortgagee's estate by the time the alleged mortgagor brought the claim. *Id. Shimsky* involved a claim against a credit company for unilaterally raising the claimant's interest rate beyond that specified in the original credit agreement. 676 P.2d at 1309. The claimant waited two years to bring the claim and made payments throughout those two years without dispute. *Id.* Both *Shimsky* and *Riley* involved claims related to contracts rather than tort claims. Both *Shimsky* and *Riley* also involved claims that accrued upon one distinct event or act by the defendants. These circumstances differ from those presented by this case where the act complained of represents alleged ongoing tortious conduct.

The Court recognizes that laches has been applied to claims of trademark infringement despite those claims generally being interpreted as continuing wrongs. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002); *See Hot Wax Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821–22 (7th Cir. 1999). Lanham Act

cases prove distinguishable, however, in their application of federal law. The Court finds that Montana law would not apply laches where a continuing tort exists.

The Montana Supreme Court interprets continuing torts favorably with an eye towards providing a remedy. The Montana Supreme Court has highlighted the injustice that otherwise would result: "[t]o classify as permanent a nuisance that continues to migrate could bar a plaintiff from bringing a nuisance action, even if the contamination from a defendant's tortious actions continues to affect different parts of her land each day." *Burley*, 273 P.3d at 839. The Montana Supreme Court similarly has recognized that claimants "who wait[] to sue until damages stabilize[] and bec[o]me permanent, should not be penalized." *Blasdel*, 640 P.2d at 894.

The Montana Supreme Court has acknowledged that the doctrine of laches and a statute of limitations share the same purpose of discouraging stale claims. *Christian v. Atlantic Richfield Co.*, 358 P.3d 131, 139 (Mont. 2015); *Algee v. Hren*, 375 P.3d 386, 389 (Mont. 2016). The Court struggles to find that the Montana Supreme Court would allow an exception to one for continuing tort claims but would apply the other to bar those same claims. This case closely resembles the situations in *Blasdel*, *Burley*, and *Knight* in which the claimant's property continued to be harmed by conduct of the defendant and such harm easily could be abated if the defendant ceased such conduct.

9

Troy's claims would fall within the statute of limitations under the continuing tort doctrine. "When a party brings a suit within the applicable statute of limitations, the defendant has the added burden of proving that extraordinary circumstances exist which requires the application of laches." *Dollar Plus Stores, Inc. v. R-Montana Associates, L.P.*, 209 P.3d 216, 221 (Mont. 2009). Greenfields has failed to demonstrate that such extraordinary circumstances exist.

The Court recognizes that the forty years that elapsed before the filing of this suit proves substantially longer than the nineteen, twenty, and twenty-seven years that elapsed in *Blasdel*, *Burley*, and *Knight*. The Court notes, however, that "[l]aches is not a mere matter of elapsed time, but rather, it is principally a question of the inequity of permitting a claim to be enforced." *Teton Coop. Reservoir Co. v. Farmers Coop. Canal Co.*, 414 P.3d 1249, 1258 (Mont. 2018). To allow a claim to proceed where the Montana Supreme Court expressly has made an exception to the statute of limitations for such claims through the continuing tort doctrine does not prove inequitable. To apply laches to bar a claim for a continuing tort would prove inequitable and would negate the purpose of the continuing tort doctrine. Accordingly, the Court finds that the doctrine of laches does not bar Troy's claims.

**II. Whether, even assuming the doctrine of laches does apply to continuing torts, Greenfields has met the elements for the doctrine to apply**

Laches represents an equitable doctrine meant to apply where "persons are negligent in asserting a right, and where there has been an unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable." *McKay v. Wilderness Dev., LLC*, 221 P.3d 1184, 1191 (Mont. 2009). "A person can be charged with laches where 'he was either actually or presumptively aware of his rights.'" *Clayton v. Atlantic Richfield Co.*, 717 P.2d 558, 561 (Mont. 1986) (quoting *Hereford v. Hereford*, 598 P.2d 600, 602 (Mont. 1979)). Laches only applies where the Court finds both "lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense." *Teton Coop. Reservoir Co. v. Farmers Coop. Canal Co.*, 414 P.3d 1249, 1258 (Mont. 2018).

**A. Whether Troy unreasonably delayed enforcement of his rights**

A party lacks diligence in asserting their rights if "a claimant contemporaneously believes another is violating his or her right, yet the claimant allows the alleged unlawful act to continue without objection." *Id.* The Montana Supreme Court has determined that a delay of 29 years between learning of grounds for a claim and bringing that claim constitutes a lack of diligence. *Clayton*, 717 P.3d at 561. No designated period of delay exists, however, to automatically trigger the

application of laches. *McKay*, 221 P.3d at 1191. "[E]ach case is determined according to its own particular circumstances." *Shimsky*, 676 P.2d at 1311.

Troy's 40-year delay constitutes a lack of diligence. The Court recognizes that the damages alleged in this case, erosion of land and sedimentary deposits, occur over a long period of time. Erosion and sedimentation are not readily apparent from one year to the next. Erosion, like pollution, can occur for decades before the harm becomes apparent. Troy knew, however, that Greenfields was diverting water across Troy's property without his permission. Troy admits that he noticed the damage to his property by 1980. (Doc. 93 at 4.) Troy complained to Greenfields on several occasions since then and reportedly spoke with his parents about wanting to take legal action against Greenfields back in the 1980s. (*Id.* at 4–5.) Troy failed to file this claim until 2021. Troy lacked diligence in bringing his claims.

### B. Whether Greenfields has suffered prejudice as a result of the delay

The doctrine of laches "is not a mere matter of elapsed time, but rather, it is principally a question of the inequity of permitting a claim to be enforced." *Algee*, 375 P.3d at 390 (internal quotations omitted). Thus, the party claiming laches must demonstrate "that the passage of time has prejudiced the party asserting laches or has rendered the enforcement of a right inequitable." *Kelleher v. Board of Soc. Work Exam'r & Licensed Prof'l Counselors*, 939 P.2d 1003, 1005 (Mont. 1997).

Greenfields argues that it has suffered economic prejudice due to Troy's delay. Greenfields notes that cost estimates provided by Troy for piping a new channel exceed $17 million while the estimates provided in 2018 approximated $4 million. (Doc. 84 at 9.) Greenfields further contends that Troy's property has appreciated in value over the delay period, thereby increasing the potential damages Greenfields will have to pay if Troy proves his loss of enjoyment of property claim. (*Id.* at 10.) Greenfields finally argues that Troy's delay has prejudiced Greenfields in its ability to seek indemnity for Troy's claims. (Doc. 122 at 4.)

The report that Greenfields cites as evidence that the cost of constructing a new channel has increased five-fold proves unpersuasive. The report indicates an installation cost of $4 million. (Doc. 93-6 at 2.) The report also states that shallow bedrock and the depth of excavation would cause excessive construction costs. This fact shows that the $4 million was not a total estimate for the work. Troy's expert report shows an estimated cost of about $5.7 million for installation. (Doc. 93-5 at 13.) The other costs relate to excavation, erosion control measures, and constructing haul roads. (*Id.*) The difference in installation costs appears much less drastic than that represented by Greenfields given that the report cited by Greenfields represented only a partial estimate.

Greenfields's claim that it has suffered prejudice due to the appreciation in value of Troy's property similarly proves unsupported. The undisputed facts at most

13

show an appreciation in the value of the Neals's property. (Doc. 93 at 8–9.) Greenfields has not sought a determination on the Neals's claims. Greenfields has sought application of the doctrine of laches to Troy's claims. The undisputed facts show that Troy received an offer in 2017 of $750,000 despite a 2014 valuation of closer to $1 million. (*Id.* at 9.) These facts presented by Greenfields at most show diminishment in the value of Troy's property over time.

Greenfields argued at the hearing that the increased silt buildup also will increase the costs of abatement. This argument ignores the implicit limitation on recovery for a continuing tort. "In a continuing tort, recovery may be had for damages accruing within the statutory period preceding commencement of the action." *Shors*, 720 P.2d at 243; *see also Christian*, 358 P.3d at 141. To permit Troy's claims under the continuing tort doctrine would not allow Troy to recover for buildup that has occurred throughout the entire 40-year period.

The insurance coverage letter that Greenfields cites similarly proves unpersuasive on the issue of prejudice. Plaintiffs correctly note that the insurance coverage letter only represents an opinion on coverage rather than a judicial determination on whether coverage exists. Plaintiffs also note that neither Greenfields nor the Montana Association of Counties have filed a declaratory action to determine the scope of indemnity coverage or the number of occurrences. (Doc. 143 at 3–4.)

Greenfields also has failed to show that any of the alleged prejudice arose from Troy's delay in filing suit. Greenfields has provided no estimates about what pipeline installation would have costed in 1980 when Troy first considered bringing the claim or the value of Troy's property at that time. Greenfields similarly has presented little to no information that insurance coverage would have been available absent Troy's delay. Greenfields submitted an affidavit from its manager that opined that he believed Greenfields had insurance as early as the 1950s. (Doc. 122-1, ¶ 6.) It remains undisputed that Greenfields started operating the Willow Creek Feeder Canal by 1942. (Doc. 104 at 5; Doc. 93-1 at 4.) It also remains undisputed that Greenfields anticipated that sedimentation and erosion would occur from the use of the Willow Creek Feeder Canal. (Doc. 93-2 at 9; Doc. 93-1 at 6.)

The insurance coverage letter notes that public policy and the law prohibit a person from obtaining insurance coverage for a known or ongoing loss. (Doc. 122-1 at 6.) Greenfields fail to show how this analysis potentially barring coverage would have differed had Troy brought his claim in 1980 when the alleged loss began occurring as early as 1942. Greenfields's claim of prejudice regarding insurance coverage proves speculative. Greenfields also fails to connect the claimed prejudice to Troy's delay and show that absent such delay, Greenfields would not have had the same problems with insurance coverage. Greenfields has failed to show prejudice or that allowing Troy's claims would prove inequitable. Accordingly, even if the

15

doctrine of laches did apply to continuing torts, Greenfields has failed to satisfy all the elements of laches. The Court finds that the doctrine of laches does not bar Troy's claims.

## CONCLUSION

The Court will deny Greenfield's motion for summary judgment on Troy's claims. (Doc. 83.) The Court finds that under Montana law the doctrine of laches does not apply to bar continuing torts. The Court further finds that even if the doctrine of laches did apply, Greenfields has failed to show prejudice sufficient to entitle Greenfields to summary judgment.

## ORDER

Accordingly, **IT IS ORDERED** that Greenfields's Motion for Partial Summary Judgment Regarding Plaintiff Troy's Claims (Doc. 83) is **DENIED**.

DATED this 3rd day of June, 2024.

_____
Brian Morris, Chief District Judge
United States District Court