IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LLOYD and DANIELLE NEAL, JAMES P. TROY, and DAVID M. SABATO and MITZI B. SABATO as trustee of SABATO DAVID M AND SABATO MITIZI B 2017 REVOCABLE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>GREENFIELDS IRRIGATION DISTRICT, FORT SHAW IRRIGATION DISTRICT, UNITED STATES, and DOES A-E,<br>Defendants. | CV-21-106-GF-BMM<br><br>ORDER |

## INTRODUCTION

Plaintiffs Lloyd and Danielle Neal, David M. Sabato and Mitzi B. Sabato, and James P. Troy (collectively "Plaintiffs") filed this action to recover for damage allegedly caused by Greenfields Irrigation District's and Fort Shaw Irrigation District's (collectively "Defendants" and individually "Greenfields" or "Fort Shaw") operation of an irrigation project that flows through Plaintiffs' properties. (Doc. 5.) The United States was joined as a necessary party since Defendants had entered contracts relating to the operation of the irrigation project. (Doc. 44, at 1-2; Doc. 49–50.)

Greenfields and Plaintiffs move for partial summary judgment as to the existence and spatial boundaries of the right way reserved to the United States over the Plaintiffs' properties pursuant to the 1890 Canal Act ("Canal Act"). (Doc. 96; Doc. 100.) Plaintiffs move for summary judgment that if the right of way does exist, the Defendants' use has exceeded the right of way's permissible scope. (Doc. 100.)

## FACTUAL BACKGROUND

The Sun River Project sits in central Montana, within the counties of Teton, Cascade, and Lewis and Clark. (Doc. 117-1 at 3.) The Sun River Project is a 91,000-acre irrigation project that was authorized under the 1902 Reclamation Act. (*Id.* at 3–4, 8.) Defendants entered a contract with the United States Bureau of Reclamation ("Bureau of Reclamation") to operate and maintain the Sun River Project. (Doc. 104, ¶¶ 1, 3; Doc. 34, ¶ 7.)

Greenfields began using the Willow Creek Feeder Canal, which is part of the Sun River Project, in 1941. (Doc. 111, ¶ 10.) The Willow Creek Feeder Canal begins where it receives water from the Pishkun Supply Canal and ends at the Willow Creek Reservoir. (Doc. 117, ¶ 2.) The Willow Creek Feeder Canal is approximately sixteen miles long. (Doc. 111, ¶¶ 2–5.)

The upper segment of the Willow Creek Feeder Canal is composed of engineered structures that direct the water to where it otherwise would not flow. (Doc. 111, ¶ 4.) The upper segment extends approximately seven and a half miles

with its origin at the Pishkun Canal. (*Id*., ¶¶ 2, 4.) The upper segment ends where it empties water into the lower segment (the "natural segment"). (*Id*., ¶¶ 2, 4.) The natural segment is a naturally occurring landscape that functions as a drainage. (*Id*., ¶ 7.) Gravity and the natural segment's contours convey the water eight and a half miles downstream where it ends by converging with Willow Creek shortly before the creek empties into the Willow Creek Reservoir. (*Id*., ¶¶ 6–7.)

The Willow Creek Feeder Canal's natural segment falls entirely within the boundaries of Plaintiffs' properties, except for a small parcel of land owned by a non-party and a portion of land owned by the State of Montana. (*Id*., ¶ 6; Doc. 112 at 4.) The land patents to Plaintiffs' properties state that the properties are subject to the Canal Act's right of way, except for a 10-acre parcel owned by Plaintiff Neal over which Plaintiff Neal's predecessor granted an easement to the United States to operate and maintain the Willow Creek Feeder Canal. (Doc. 104, ¶¶ 12–13.)

Conveying water through the Willow Creek Feeder Canal has caused its banks to erode, sediment to deposit within its channel, and the banks to move laterally. The Willow Creek Feeder Canal's contours also have changed since the Willow Creek Feeder Canal was first used. (*Id*., ¶¶ 14–15, 18–20, 21, 23).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

Greenfields and Plaintiffs dispute whether the Willow Creek Feeder Canal's natural segment is "constructed," and, therefore, represents part of the right of way reserved to the United States by the Canal Act. If the natural segment constitutes part of the right of way, the parties assert different ways to determine the right of way's spatial boundaries. Plaintiffs argue that if the right of way exists, Greenfields has exceeded the right of way's boundaries or unnecessarily harmed Plaintiffs when operating the Willow Creek Feeder Canal.

Congress passed legislation in 1888 to withhold land in the United States from further sale and reserved it as property of the United States. *Green v. Willhite*, 160 F. 755, 756 (C.C., D. Idaho 1906). Congress repealed this legislation in 1890 and passed a series of acts to facilitate the reclaiming of arid lands. *Id*.; *United States v. Van Horn*, 197 F. 611, 615. (D. Colo. 1912). The Canal Act was among these acts. Aug. 30, 1890, c. 837, § 1, 26 Stat. 391. (codified as 43 U.S.C. § 945)

The Canal Act requires all land patents issued after August 30, 1890, to expressly provide the United States a right of way "for ditches or canals constructed

4

by the authority of the United States." 43 U.S.C. § 945. The reservation of this right of way sought to prevent interference with the United States's ability to reclaim arid land. *Van Horn*, 197 F. at 615.

## I. Statutory interpretation of the Canal Act.

Statutory interpretation begins by "'determin[ing] whether the language at issue has a plain and unambiguous meaning.'" *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). A court refers "to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole" to interpret statutory text. *Youssef*, 547 F.3d at 1093 (quoting *Robinson*, 519 U.S. at 341) (internal quotations omitted). When a statute does not define a word, the "ordinary, contemporary, and common meaning" of the word is employed. *United States v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010) (quoting *United States v. Iverson*, 162 F.3d 1015, 1022 (9th Cir. 1998)) (internal quotations omitted).

### A. The Canal Act's plain language is not ambiguous.

The Canal Act's use of the word "constructed" is not ambiguous when considered in the broader context of the statute as a whole. Congress made clear in the series of laws it enacted along with the Canal Act that it aimed to facilitate the United States's reclamation of arid lands. Congress's use of the word "constructed" provided the United States wide latitude in how it could create a system to convey water to arid lands. "Construct" is broadly defined as "to make or form by combining

5

or arranging parts or elements." *Construct*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/construct (last visited May 21, 2024).

Plaintiffs argue that the term "constructed" requires canals to contain man-made components. Based on this definition, Plaintiffs argue that the United States lacks a right of way over the Willow Creek Feeder Canal's natural segment until human engineering modifies it. (Doc. 101 at 6–7.) This interpretation would be contrary to the Canal Act's purpose. This interpretation also remains unsupported by the ordinary meaning of the word "constructed." To narrowly construe the word "constructed" to require the United States to modify all canals within an irrigation system would impose a burden on the United States's ability to reclaim arid lands. The ordinary meaning of construct does not require all portions of the whole to be human engineered. The word construct means "to put together different parts to form something whole." *Construct, Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/constructed#google_vignette (last visited May 21, 2024).

The Sun River Project uses the Pishkun Supply Canal and the upper segment of the Willow Creek Feeder Canal to convey water to the natural segment. This natural segment moves water downstream with no assistance from human engineering. Employing man-made components to convey water to a naturally occurring drainage in order to create a larger conveyance system meets the

6

commonsense definition of constructed. The United States "constructed" the Willow Creek Feeder Canal for the purposes of the Canal Act.

### B. "Constructed" lacks an established meaning at common law.

If a term used by Congress has an established meaning under the common law, a court must infer that Congress meant to incorporate the established meaning unless the statute otherwise dictates. *Youssef*, 547 F.3d at 1093 (quoting *Neder*, 527 U.S. 1, 21–22 (1999)). It appears from a review of caselaw that there was not an established definition of the word "constructed" when Congress enacted the Canal Act. Plaintiffs argue the Court should follow the interpretation of "construction" in *Baker Ranches, Inc. v. Zinke*, 625 F. Supp. 3d 1080 (D. Nev. Sep. 1, 2022). (Doc. 101 at 8–11). The district court's interpretation of "construction" in *Baker Ranches* proves unhelpful because the 1866 Mining Act's ("Mining Act") purpose and reservation differ from the Canal Act.

The Mining Act established "the right of way for the construction of ditches and canals" on certain public lands. *Baker Ranches*, 625 F. Supp. 3d at 1099. The Mining Act refers to state law to determine the scope of the right of way. *Id*. at 1103 (citations omitted). The claimants in *Baker Ranches* asserted an easement under the Mining Act to a natural channel flowing through public lands. *Id*. at 1104–05. In analyzing whether a party had access to maintain a natural channel under the Mining Act, the district court determined that the Mining Act's text did not "contemplate a

right of way over a natural channel." *Id*. at 1105. *Baker Ranches* relied on the Mining Act's text and resolved any ambiguity in the text by restricting the statutory grant over public lands. *See id*. at 1104 (citing *Caldwell v. United States*, 250 U.S. 14, 21 (1919)). The district court looked to the purpose of the Mining Act and concluded that "[t]he 1866 Act was not concerned with protecting existing rights-of-way over natural channels of water, where no investment of construction was made." *Baker Ranches*, 625 F. Supp. 3d at 1105. Rather, it was "directed towards securing rights-of-way for the construction and maintenance of *man-made* water conveyances." *Id*. (emphasis added).

Unlike the Mining Act, which reserves a right of way to a private party over public lands, the Canal Act reserves a right of way over private lands to the United States. The sovereign grantor canon requires that any ambiguity of what constitutes a "constructed" canal under the Canal Act be resolved in favor of the United States. *Alaska R.R. Corp. v. Flying Crown Subdivision Addition No. 1 & No.2 Property Owners Ass'n*, 89 F.4th 792, 799 (9th Cir. 2023), docketed for cert (No. 23-1041).

To narrowly interpret the word "constructed" to mean only man-made portions of an irrigation system would disfavor the United States and inhibit the Canal Act's purpose of facilitating the reclamation of arid lands. The Court reasonably construes the word "constructed" broadly in light of the context of the

Canal Act and the word's common usage. The Court finds that all parts of the Willow Creek Feeder Canal, including the natural segment, are part of a "constructed" canal.

**II.     The Canal Act reserved a surface right of way to the United States that must be exercised with "ordinary care."**

When the scope of the statute's reservation is undefined, the court applies "common law principles, the sovereign grantor canon, and contemporaneous [federal acts]" to determine the reservation's scope. *Alaska R.R. Corp.*, 89 F.4th at 799. The sovereign grantor canon requires that ambiguous land grants "be resolved in favor of the government, to interpret the reservation expansively." *Id*. at 802. Congressional grants are "given a broader scope for the purpose of executing the legislative intent." *Van Horn*, 197 F. at 616 (citations omitted); *see also United States v. 5.61 Acres of Land, More or Less, in El Dorado Cnty., State of Cal.*, 148 F. Supp. 467, 468 (N.D. Cal. 1957) (statutory reservations "reverse general rule that a reservation by the grantor is to be construed in a light most favorable to the grantee").

**A.     Congress acted intentionally when it gave the United States a broad reservation and limited private parties' reservation on public lands.**

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Plaintiffs argue the textual differences in the Canal Act and 43 U.S.C. § 946 demonstrate that Congress intended the Canal Act's

9

reservation to be more restrictive than the reservation related to water conveyances created by § 946. (Doc. 103 at 8–9.) This interpretation runs contrary to the text of both acts.

The Canal Act reserves to the United States a right of way to construct a canal or ditch. The Canal Act does not specify the right of way's spatial boundaries. Section 946 reserves a right of way to private parties over public lands that already have been "occupied by the water of any reservoir and of any canals and laterals and fifty feet on each side of the marginal limits thereof . . . ." Section 946 requires the private party to prove that a secondary easement is necessary to operate and maintain for secondary rights to exist. The lack of parameters in the Canal Act's text and the express limits in the text of § 946 demonstrate that Congress had the ability to specify boundaries but chose not to do so when drafting the Canal Act.

B.        **Limits of the right of way.**

The Canal Act fails to specify the characteristics of the right of way that it reserves to the United States: it does not specify the servient and dominant estate, duration, spatial boundaries, or associated rights of the right of way. This ambiguity must be construed in favor of the United States and given a broad scope to account for the Canal Act's purpose. The Canal Act sought to avoid interference in the ability of the United States to reclaim arid lands. *Van Horn*, 197 F. at 615.

The Canal Act does not reserve a boundless and limitless right of way to the United States. *See United States v. Ide*, 277 F. 373, 381–82, aff'd, 263 U.S. 497 (1924) (person cannot act recklessly or carelessly and cannot unnecessarily damage the land); *5.61 Acres*, 148 F. Supp. at 469. *Ide* confirmed that a party's exercise of a secondary easement must be reasonable and necessary and any additional burden is compensable. *Ide*, 277 F. at 381–82.

The Court finds that the right of way reserved to the United States by the Canal Act exists so long as the United States and Defendants continue to use the canal to irrigate land. The right of way includes the right to access the Willow Creek Feeder Canal, in its entirety, to operate and maintain the Willow Creek Feeder Canal. The right of way would lose its effectiveness absent the right to access the Willow Creek Feeder Canal to maintain and operate it.

Greenfields argues that the right of way proves limitless and that the Willow Creek Feeder Canal can take as much space as required to fulfill the purpose of the Canal Act. (Doc. 99 at 16.) The right of way carries limits. The United States must exercise "ordinary care" when operating and maintaining the right of way. *Ide*, 277 F. at 381–82. Greenfields's actions must be reasonable and necessary for the operation and maintenance of the Willow Creek Feeder Canal. *5.61 Acres of Land*, 148 F. Supp. at 468. Greenfields cannot operate or maintain the Willow Creek

11

Feeder Canal in a manner that imposes an additional burden on the Plaintiffs' properties. *Id.*

Actions by Greenfields that prove unnecessary or unreasonable for the operation and maintenance of the Willow Creek Feeder Canal fall outside the scope of the right of way. Plaintiffs have a right to recover for damages caused by Defendants' conduct that could be considered reckless, careless, unreasonable, or unnecessary to operate and maintain the Willow Creek Feeder Canal. *See Ide*, 277 F. at 381–82 (plaintiffs not prejudiced from recovering "any damages resulting from the want of ordinary care"); *5.61 Acres of Land*, 148 F. Supp. at 469 (plaintiff has right to recover if the easement increases the burden on the plaintiff's land).

**III. Whether Defendants have acted with ordinary care and exceeded the scope of the right of way depends on factual disputes that must be resolved by a fact finder.**

Plaintiffs and Greenfields agree to the following facts:

1. The contours of the Willow Creek Feeder Canal have changed since it was first put to use;
2. The banks of the Willow Creek Feeder Canal's natural segment have moved laterally;
3. Sediment deposits have occurred within the channel of the Willow Creek Feeder Canal due to the conveyance of water through it; and
4. Water moving through the Willow Creek Feeder Canal has caused and continues to cause erosion.

(Doc. 111, ¶¶ 14–15, 18–20, 21 23.)

Greenfields contends, however, that its use of the Willow Creek Feeder Canal has been reasonable and diligent, and therefore, that the sediment, erosion, and

contour change are not excessive. (*Id.*, ¶¶ 16–17, 18–20, 27; Doc. 110 at 25.) Plaintiffs have provided an expert report stating the use of the Willow Creek Feeder Canal has caused substantial erosion and that poor maintenance and a lack of piping or other remediation measures have caused the excessive erosion. (Doc. 102-5 at 3, 9–12.)

Greenfields disputes the facts within Plaintiffs' expert's report. (Doc. 110 at 25.) Greenfields argues that Greenfields always has operated the Willow Creek Feeder Canal below its designed flow rate. (*Id.*) Greenfields supported its contention with testimony from the Bureau of Reclamation designee stating that the Bureau of Reclamation believes Greenfields has acted reasonably when operating and maintaining the Willow Creek Feeder Canal. (*Id.*)

A genuine issue of material fact exists as to whether Greenfields has appropriately operated the Willow Creek Feeder Canal based upon the evidence submitted. The presence of a genuine issue of material fact renders summary judgment inappropriate as to this issue. The Court denies Plaintiffs' motion for summary judgment.

## ORDER

Accordingly, **IT IS ORDERED** Greenfields's Motion for Partial Summary Judgment Regarding Canal Easement (Doc. 96) is **GRANTED** as to the existence of the easement and Plaintiffs' Motion for Partial Summary Judgment Regarding the

Easement (Doc. 100) is **DENIED**. To the extent that Greenfields's or Plaintiffs' motions for partial summary judgment ask this Court to determine whether Defendants have exercised ordinary care in operating and maintaining the Willow Creek Feeder Canal or exceeded the scope of any easement, the motions are **DENIED**.

DATED this 3rd day of June, 2024.

*/s/ Brian Morris*

Brian Morris, Chief District Judge
United States District Court