IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LLOYD and DANIELLE NEAL, JAMES P. TROY, and DAVID M. SABATO and MITZI B. SABATO as trustees of SABATO DAVID M AND SABATO MITZI B 2017 REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>GREENFIELDS IRRIGATION DISTRICT, FORT SHAW IRRIGATION DISTRICT, UNITED STATES, and DOES A-E,<br><br>Defendants. | Cause No. CV-21-106-GF-BMM<br><br>ORDER |

**INTRODUCTION**

Defendant Greenfields Irrigation District ("GID") filed a motion for partial summary judgment that the damages to the Willow Creek Reservoir prove unrecoverable. (Doc. 131 at 2.) Plaintiffs oppose that motion. (Doc. 138 at 2–3.) Plaintiffs have filed a motion for summary judgment on the amount of tort damages recoverable against GID and Forth Shaw Irrigation District ("FSID") under Mont. Code Ann. § 2-9-108. (Doc. 141 at 2–3.) GID opposes the motion (Doc. 173 at 2), and FSID joined in that opposition. (Doc. 178 at 3.) Finally, FSID has filed two motions for partial summary judgment. FSID seeks a determination that the statutory

1

tort damages cap applies to limit the amount of damages recoverable against FSID. (Doc. 145 at 8.) Plaintiffs oppose this motion. (Doc. 180 at 7.) FSID also seeks a determination that punitive damages prove unrecoverable based on FSID's status as a political subdivision of a governmental entity. (Doc. 148 at 5.) Plaintiffs do not oppose such determination. (Doc. 161 at 2.) The Montana Association of Counties ("MACO") filed a motion to intervene for the limited purpose of advising the Court of arbitration provisions in the insurance contracts with GID that render inappropriate a determination by the Court as to insurance coverage. (Doc. 185.) The Court held a hearing on the motions on June 24, 2024. (Doc. 206.)

## BACKGROUND

GID entered a contract with the United States Bureau of Reclamation ("BOR") to perform operation and maintenance duties for the Sun River Project. (Doc. 34, ¶ 7.) The Sun River Project uses various reservoirs including the Willow Creek Reservoir to store and deliver water from the Sun River and its tributaries. (*Id.*, ¶ 2.) The project diverts water from the Sun River Diversion Dam to the Willow Creek Reservoir using the Willow Creek Feeder Canal ("WCFC"). (*Id.*, ¶ 2.) The WCFC runs across land owned by Plaintiffs Lloyd and Danielle Neal ("Neals"), James P. Troy ("Troy"), and David M. Sabato and Mitzi B. Sabato as trustees of the Sabato David M and Sabato Mitzi B 2017 Revocable Trust ("Sabatos") (collectively "Plaintiffs"). (Doc. 111, ¶ 6.)

2

Plaintiffs have brought this action against GID and FSID alleging the following claims: (1) negligence, (2) public nuisance, (3) private nuisance, (4) trespass, (5) strict liability for abnormally dangerous activity, (6) wrongful occupation of real property, and (7) unjust enrichment. (Doc. 5 at 10–18.) Plaintiffs contend that the Defendants have failed to reasonably maintain and operate the WCFC. (*Id.*, ¶ 21.) Plaintiffs further contend that the Defendants' alleged failures have caused both erosion of the Plaintiffs' properties and a build-up of silt and sediment on the Plaintiffs' properties. (*Id.*) Plaintiffs seek damages for loss of enjoyment, diminution of value, and restoration of their real property. (*Id.*, ¶ 61.)

## STANDARD OF REVIEW

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

## DISCUSSION

The Court first addresses GID's motion relating to damages to Willow Creek Reservoir. The Court next addresses Plaintiffs' motion for a determination as to the applicability of the statutory cap under Mont. Code Ann. § 2-9-108. The Court notes

3

that Plaintiffs' motion initially also sought a determination on insurance coverage. Plaintiffs have withdrawn any motion to determine insurance coverage. This withdrawal has rendered moot MACO's motion to intervene. (Doc. 185.) The Court lastly will address FSID's motions regarding punitive damages and the tort damages cap. The Court recognizes that GID also has filed a motion for partial summary judgment on restoration damages. (Doc. 151.) The Court will address that motion in a separate order.

## I. GID's Motion for Partial Summary Judgment Regarding Damages to Willow Creek Reservoir

GID argues that Plaintiffs seek to recover damages for the cost of removing sediment build up in Willow Creek Reservoir. (Doc. 131 at 2.) GID contends that Plaintiffs cannot recover these damages because harm to Willow Creek Reservoir is not at issue in this lawsuit. (*Id.*) GID correctly notes that Plaintiffs have no property interest in Willow Creek Reservoir or the water therein. (*Id.*) Plaintiffs note, however, that they seek damages related to the restoration of their properties, not damages related to the restoration of Willow Creek Reservoir. (Doc. 138 at 5.) Plaintiffs' expert has created a restoration plan that would take silt and sediment that has built up in Willow Creek Reservoir over time and use it to restore Plaintiffs' properties. (*See* Doc. 104-5 at 13.) Plaintiffs argue that the use of the sediment in the

4

Willow Creek Reservoir proves appropriate because that silt and sediment represents at least, in part, deposits from Plaintiffs' own properties. (Doc. 138 at 11–12.)

Plaintiffs contend that the restoration plan set forth by their expert proves reasonable because it seeks to bring soil and sediment that has washed away from Plaintiffs' properties through operation of the WCFC back to their properties. (*Id.*) Plaintiffs argue that the restoration plan proposes a method that returns Plaintiffs' properties as close to their original condition as can be done. Plaintiffs also note that GID previously argued against joining MTFWP and took the position that complete relief could be awarded absent MTFWP's participation because remediation could occur on non-party lands. (*Id.* at 8.) Plaintiffs argue that it would be inconsistent for GID to have taken this position previously and now argue that Plaintiffs cannot use a restoration plan and damages estimate that involves non-party lands. (*Id.* at 11.)

Both parties cite *Sunburst School Dist. N. 2 v. Texaco, Inc.*, 165 P.3d 1079 (Mont. 2007), in support of their arguments regarding damages. *Sunburst* permitted owners of land that had been contaminated by Texaco to recover restoration damages. *Id.* at 1088. The Montana Supreme Court also allowed the school to recover restoration damages despite not having a personal residence on the property because successful remediation of the private landowners' properties required remediation of the school's property as well. *Id. Sunburst* proves distinguishable. *Sunburst* involved groundwater that all had to be remediated at once because

5

piecemeal remediation would have resulted in the remediated groundwater being contaminated again by non-remediated groundwater. Successful restoration of Plaintiffs' properties does not similarly depend on restoration of the Willow Creek Reservoir. *Sunburst* also considered only whether restoration damages proved appropriate. The Montana Supreme Court did not address what type of restoration plans could be presented to a factfinder at trial. GID's motion challenges the feasibility and extent of Plaintiffs' restoration plan rather than the propriety of restoration damages. The parties' arguments regarding *Sunburst* prove unpersuasive in light of these differences.

GID misconstrues the damages sought by Plaintiffs. GID continually characterizes the removal of silt and sediment from Willow Creek Reservoir as restoration of Willow Creek Reservoir. (Doc. 131 at 7, 9, 13; Doc. 160 at 5, 9.) The amounts estimated for removal of the silt and sediment from Willow Creek Reservoir represent estimates of damages, however, for restoring Plaintiffs' properties. Plaintiffs' plan seeks to restore soils that allegedly have washed away from Plaintiffs' properties due to the operation of the WCFC. Whether the silt and sediment used to refill and restore Plaintiffs' properties comes from Willow Creek Reservoir or from some other area makes no difference. Plaintiffs' expert stated that either approach would cost substantially the same amount. (Doc. 139-8, ¶¶ 4–6.)

Removing silt and sediment from Willow Creek Reservoir represents a reasonable method for gathering the materials necessary to restore Plaintiffs' properties.

It remains true that the federal government does not have to permit Plaintiffs to take sediment directly from Willow Creek Reservoir to restore their properties. The cost of doing so still represents, however, a reasonable measure of damages. The plan to use the silt and sediment from Willow Creek Reservoir likely represents the most reasonable method for restoring Plaintiffs' properties. This plan avoids the increased cost of shipping silt and sediment from another location, provides for localized, efficient restoration, and restores the Plaintiffs' properties with materials most similar to the original materials that washed away from Plaintiffs' properties, which protects the ecology of the surrounding areas.

The Court will permit Plaintiffs to present evidence of the cost estimates for using fill from Willow Creek Reservoir to restore Plaintiffs' properties. Plaintiffs' restoration plan does not seek damages for harm done to Willow Creek Reservoir as GID contends. Plaintiffs' restoration plan seeks damages for harm allegedly done to their properties and presents cost estimates for restoring their properties. The cost estimates in Plaintiffs' restoration plan use the approach of taking fill material from Willow Creek Reservoir. This fact does not make the estimated damages any less recoverable than if the plan relied on purchasing and shipping fill material from another location. This claim proves especially true where, as here, both approaches

7

cost substantially the same amount of money to implement. The Court will deny GID's motion for partial summary judgment regarding reservoir damages.

## II. Plaintiffs' Motion for Partial Summary Judgment Regarding the Application of Mont. Code Ann. § 2-9-108(1) and/or the Extent of Insurance Coverage

The Court previously determined that Mont. Code Ann. § 2-9-108 applied to Plaintiffs' claims and limited the damages recoverable against GID. (Doc. 68 at 2–3.) Plaintiffs agreed to such determination but noted that such determination did not address the insurance exception to the statutory tort damages cap provided under Mont. Code Ann. § 2-9-108(3). Plaintiffs now argue that the statutory tort cap proves inapplicable to the Plaintiffs' claims contrary to Plaintiffs' prior position. Plaintiffs then argue that if the statutory tort cap set forth in Mont. Code Ann. § 2-9-108(1) applies, $3 million per year per defendant represents the appropriate statutory limit.

### A. Whether the statutory cap applies

Plaintiffs contend that the statutory cap does not apply because the claims brought by Plaintiffs do not represent "qualifying tort claims." Plaintiffs rely on a decision from the Montana Eighth Judicial District Court in which the Montana state district court determined that the statutory cap does not apply to torts premised on government-specific duties. (Doc. 141 at 16–18 (citing *S.W. v. Montana*, 2024 MT 55, __ P.3d __ (Mont. 2024).)

8

Section 2-9-108(1) of the Montana Code Annotated limits the damages recoverable against the state or a political subdivision of the state to $750,000 per claim and $1.5 million per occurrence. Claim means a "claim against a governmental entity . . . under circumstances where the governmental entity, if a private person, would be liable to the claimant for the damages under the laws of the state." Mont. Code Ann. § 2-9-101(1). The Montana state district court determined that where a party brings an action involving government-specific duties, that action falls outside the definition of "claim" because a private person could not similarly be held liable for the conduct. *See S.W.*, 2024 MT 55, ¶ 64, __ P.3d __. The Montana state district court accordingly determined that Mont. Code Ann. § 2-9-108(1) would not apply to torts involving a government-specific duty. *Id.*

GID argues that the Court should not disturb its prior determination as to the application of Mont. Code Ann. § 2-9-108, especially where the only authority for doing so constitutes an unpublished opinion of a Montana state district court. (Doc. 173 at 2–3.) The Montana Supreme Court overturned the Montana state district court's decision in *S.W.* on other grounds and declined to address the propriety of the "government-specific duty" exception recognized by the Montana state district court. *S.W.*, 2024 MT 55, ¶ 64, __ P.3d __. No other authority exists to similarly limit the application of Mont. Code Ann. § 2-9-108.

Even applying the "government specific duty" exception to Mont. Code Ann. § 2-9-108, Plaintiffs' claims fall outside that exception. Plaintiffs cite the statutorily imposed duty on irrigation districts as evidence of a government-specific duty involved in this case. Plaintiffs fail to recognize, however, that their claims do not involve a breach of the government's duty to irrigate. Plaintiffs have brought claims for trespass, negligence, nuisance, wrongful occupation, unjust enrichment, and strict liability for an abnormally dangerous activity. Plaintiffs allege that GID's and FSID's operation of the WCFC result in a discharge of water onto Plaintiffs' properties that causes erosion. These claims represent claims for which a private person can be held liable. Plaintiffs' claims allege a failure to use reasonable care in the operation of the WCFC and other claims that do not implicate special government duties. (*Id.* at 11–12.)

The Court finds that even if the Court accepted the "government-specific duty" exception urged by Plaintiffs, Mont. Code Ann. § 2-9-108(1) still applies to Plaintiffs' claims. The Court will deny Plaintiffs' motion for summary judgment to the extent that Plaintiffs seek to avoid the application of the damages cap. For these reasons and the reasons outlined in the Court's prior order as to the application of Mont. Code Ann. § 2-9-108(1) to claims against GID (Doc. 68), the Court will grant FSID's motion for summary judgment on the application of the tort damages cap.

The Court notes, however, that no determination has been made as to the application of Mont. Code Ann. § 2-9-108(3).

### B. What represents the appropriate limit on tort damages for Plaintiffs' claims under Mont. Code Ann. § 2-9-108(1)

Section 2-9-108(1) of the Montana Code Annotated provides as follows:

> The state, a county, municipality, taxing district, or any other political subdivision of the state is not liable in tort action for damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of *$750,000 for each claim and $1.5 million for each occurrence.*

Mont. Code Ann. § 2-9-108(1) (emphasis added).

Plaintiffs argue that $3 million per year against GID and $3 million per year against FSID represent the appropriate statutory limits for Plaintiffs' claims. Plaintiffs argue that the presence of three plaintiffs triggers the "per occurrence" limit such that Plaintiffs collectively cannot recover more than $1.5 million for each occurrence. Plaintiffs argue, however, that two occurrences happen each year. Plaintiffs note that GID has admitted that it turns on the WCFC in the spring and turns it off in the summer. (Doc. 142-4 at 12–13.) GID turns on the WCFC again in the fall and turns it off again in the winter. (*Id.* at 13.) GID's 30(b)(6) representative admitted that new erosion occurs each time that GID turns on the WCFC and Plaintiffs' properties experience new damage. (*Id.* at 15–16.) Plaintiffs argue that these two occurrences per year provide for a potential total cap of $3 million per year from both GID and FSID.

11

GID argues that the Court should avoid making any coverage determination because the coverage policies are not at issue here. Plaintiffs clarified at the hearing on this motion that Plaintiffs are not seeking a determination of insurance coverage. Plaintiffs withdrew their request for the Court to construe the insurance policies maintained by GID and FSID. Plaintiffs seek only a determination of the applicable tort damages limit. Such determination does not depend upon or require interpretation of the actual insurance policies issued by MACO or the reinsurers.

Section 2-9-108(1) of the Montana Code Annotated uses the term "occurrence" without otherwise defining the term. The Montana Supreme Court addressed the application of Mont. Code Ann. § 2-9-108 where an employee at the Montana Developmental Center admitted to raping a patient three times. *Maguire v. Montana*, 835 P.2d 755, 763 (Mont. 1992). The Montana Supreme Court affirmed the Montana state district court's decision to treat each rape as a separate claim. *Id.* The Montana Supreme Court reasoned that "each rape was a separate wrongful act." *Id.* The Montana Supreme Court has not addressed the meaning of occurrence as used in Mont. Code Ann. § 2-9-108(1), but the Montana Supreme Court caselaw interpreting insurance contracts proves illustrative.

The Montana Supreme Court has adopted the "'cause' theory for interpreting the term 'occurrence' in an insurance liability policy that limits the insurer's liability to a specified amount per 'occurrence.'" *Heggem v. Capitol Indem. Corp.*, 154 P.3d

12

1189, 1195 (Mont. 2007). The "cause theory" approach determines the number of occurrences by looking to the cause or causes of the damage or injury rather than the number of injuries or claims. *Id.* at 1195.

The Montana Supreme Court applied the "cause theory" in *National Indem. Co. v. State*. 499 P.3d 516, 541–42 (Mont. 2021). *National Indem. Co.* involved miners who had worked in Libby, Montana and had become exposed to asbestos during their work. *Id.* at 521–22. The State of Montana knew about the presence of asbestos in the mines as early as 1956, but the State of Montana chose not to warn the miners. *Id.* at 521–22. The insurer argued that the state's decision to follow the attorney general's recommendation not to warn the miners constituted the sole cause of the failure to warn and the resulting exposure. *Id.* at 542. The Montana Supreme Court rejected that argument. *Id.* The Montana Supreme Court determined instead that "the State's multiple decisions over the course of more than a decade to withhold certain information caused the claimants' injuries." *Id.*

GID fails to opine on the number of occurrences or set forth GID's opinion as to the appropriate statutory limit. GID cites *Western Nat'l Mut. Ins. Co. v. Rainbow Ranch Holdings, LLC*, CV-23-05-BU-BMM, 2023 U.S. Dist. LEXIS 207868 (D. Mont. 2023). (Doc. 173 at 15.) *Western Nat'l Mut. Ins. Co.* involved a wife who had sued in Montana state district court for damages that she and her deceased husband had suffered as a result of carbon monoxide poisoning while staying in the

13

defendant's hotel. 2023 U.S. Dist. LEXIS 207868, at *2–3. The hotel's insurer brought a declaratory judgment action seeking a determination as to the number of occurrences for purposes of the policy. *Id.*, at *2. The Court determined that carbon monoxide buildup represented the sole cause of the couple's injuries. *Id.*, at *18. Multiple factors contributed to the buildup of the carbon monoxide, but the buildup of the carbon monoxide represented the "cause" of the harm such that there was only one occurrence. *Id.*

This case proves distinguishable from *Western Nat'l Mut. Ins. Co.* Plaintiffs undisputedly allege that GID turns the WCFC on and off two separate times throughout the year. The water flowing for several months at a time represents an ongoing harm similar to allowing the carbon monoxide to build up. Running the water at two separate times per year, however, constitutes two separate events. GID opens the gate to the WCFC two separate times each year. (Doc. 174, ¶¶ 10–11; Doc. 142-4 at 12–13, 15.) The conditions during the spring operation differ from those during the fall operation. The opening of the gate represents the cause of the harm that allows water to pass through the WCFC. That cause occurs two separate times in a year.

This case proves more comparable to *National Indem. Co.* The Montana Supreme Court in *National Indem. Co.* rejected the insurer's argument that the decision to conceal knowledge from the miners in accordance with the attorney

14

general's advice constituted the "cause" of the miner's harm. 499 P.3d at 542. The Montana Supreme Court determined instead that "the State's multiple decisions over the course of more than a decade to withhold certain information caused the claimants' injuries." *Id.* Similarly, here, it is not the original decision to design and operate the WCFC that causes the erosion and injury to Plaintiffs' properties. The opening of the WCFC to allow water to flow through the canal represents the "cause" of the erosion and injury. GID opens the WCFC on two separate occasions throughout the year. The Court finds that Plaintiffs' claims allege two occurrences per year. Section 2-9-108(1) limits the damages recoverable by Plaintiffs to $3 million per year per irrigation district.

### III. FSID's Motion for Partial Summary Judgment Regarding Punitive Damages

FSID contends that it enjoys immunity from a claim for punitive damages. (Doc. 148 at 4.) FSID argues that it constitutes a governmental entity and that governmental entities enjoy immunity from punitive damages under Mont. Code Ann. § 2-9-105. (*Id.*) Plaintiffs agree that Mont. Code Ann. § 2-9-105 grants immunity to FSID from any claim for punitive damages. (Doc. 161 at 2.) The Court will grant FSID's motion for summary judgment on this issue.

## CONCLUSION

The Court will deny GID's motion for partial summary judgment regarding reservoir damages. Plaintiffs' restoration plan does not claim damages for harm done

15

to Willow Creek Reservoir. Plaintiffs' restoration plan instead claims damages for restoring Plaintiffs' properties with a plan that uses fill material from the nearby reservoir rather than purchasing and shipping fill material to Plaintiffs' properties. To the extent that GID challenges the feasibility or reasonableness of this restoration plan, the Court notes that other mechanisms asserting these same challenges remain outstanding. (*See* Doc. 151; Doc. 182.) The Court will deny Plaintiffs' motion for a determination that Mont. Code Ann. § 2-9-108 proves inapplicable to Plaintiffs' claims. The Court will grant Plaintiffs' motion as to the statutory tort cap of $3 million per year per irrigation district. Finally, the Court will grant FSID's motions for summary judgment on the issue of the tort damages cap and on the issue of punitive damages.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. GID's Motion for Partial Summary Judgment Regarding Reservoir Damages (Doc. 130) is **DENIED**.

2. Plaintiffs' Motion for Summary Judgment Regarding the Tort Damages Cap (Doc. 140) is **GRANTED** to the extent that it seeks a determination of two occurrences per year for a total cap of $3 million per year per irrigation district.

3. Plaintiffs' Motion for Summary Judgment Regarding the Tort Damages Cap (Doc. 140) is **DENIED** to the extent that it seeks a determination that Mont. Code Ann. § 2-9-108(1) does not apply to Plaintiffs' claims.

4. FSID's Motion for Partial Summary Judgment on the Application of the Tort Damages Cap (Doc. 144) is **GRANTED**.

5. FSID's Motion for Partial Summary Judgment Regarding Punitive Damages (Doc. 147) is **GRANTED**.

6. MACO's Motion to Intervene (Doc. 185) is **DENIED AS MOOT**.

DATED this 10th day of July, 2024.

*/s/ Brian Morris*

Brian Morris, Chief District Judge
United States District Court