IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LLOYD and DANIELLE NEAL, JAMES P. TROY, and DAVID M. SABATO and MITZI B. SABATO as trustees of SABATO DAVID M AND SABATO MITZI B 2017 REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>GREENFIELDS IRRIGATION DISTRICT, FORT SHAW IRRIGATION DISTRICT, UNITED STATES, and DOES A-E,<br><br>Defendants. | Cause No. CV-21-106-GF-BMM<br><br>ORDER |

## INTRODUCTION

The Court addresses three outstanding motions for summary judgment. Defendant Greenfields Irrigation District ("GID") filed a motion for partial summary judgment regarding the availability of restoration damages. (Doc. 151.) Plaintiffs oppose that motion. (Doc. 190.) The Court held a hearing on the motion on June 24, 2024. (Doc. 206.) Defendant Fort Shaw Irrigation District ("FSID") filed a motion for partial summary judgment that the Settlement Agreement between FSID and GID prevents Plaintiffs from recovering damages against FSID. (Doc. 157.) GID opposes the motion in part. (Doc. 211 at 3.) Plaintiffs oppose the motion. (Doc. 200

1

at 2.) GID filed a motion for partial summary judgment seeking to limit the recoverable damages available under the continuing tort doctrine. (Doc. 162.) FSID joins the motion (Doc. 169.) Plaintiffs oppose the motion. (Doc. 207.) The Court held a hearing on the last two motions on October 2, 2024. (Doc. 248.)

## BACKGROUND

The Court previously has recited the factual background in this case at length. *Neal et al. v. Greenfields Irrigation Dist. et al.*, 2024 WL 4652942 (D. Mont. Nov. 1, 2024); *Neal et al. v. Greenfields Irrigation Dist. et al.*, 2024 WL 2818389 (D. Mont. June 3, 2024). The Court will not repeat here the factual background giving rise to this litigation.

## STANDARD OF REVIEW

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

## DISCUSSION

**I.  GID's Motion for Partial Summary Judgment Regarding Restoration Damages**

GID argues that Plaintiffs cannot recover restoration damages because the erosion conditions existed on the properties before the Plaintiffs acquired them. (Doc. 152 at 3.) GID contends that the restoration proposed by Plaintiffs seeks to put the properties in a much better condition than when the Plaintiffs purchased them, which proves inappropriate for restoration damages. (*Id.*) GID further argues that the restoration plan cannot be implemented because its constructability has not yet been tested. (*Id.*)

Whether a party qualifies for restoration damages presents a question of law. *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1086 (Mont. 2007). The existence of restoration damages presents, however, a question of fact. *Lampi v. Speed*, 261 P.3d 1000, 1008 (Mont. 2011). A "plaintiff may elect in an 'appropriate case' to seek either the diminution in market value or the cost of reasonable restoration as the plaintiff's measure of damages." *Lampi*, 261 P.3d at 1005 (internal citations omitted). An 'appropriate case' for restoration damages exists where the case involves "temporary damage and reasons personal to the plaintiff to restore property to its former condition." *Id.* Whether personal reasons exist for restoration and whether an injury proves temporary "generally present factual questions for a fact-finder to resolve." *McEwen v. MCR, LLC*, 291 P.3d 1253, 1262 (Mont. 2012).

The Court views with some uncertainty Plaintiffs' claim for restoration damages. The facts of this case differ from those of others in Montana, where the Montana Supreme Court determined restoration damages were appropriate. *See e.g. Sunburst*, 165 P.3d at 1083–87 (restoration damages were appropriate for benzene contamination of groundwater); *Lampi*, 261 P.3d at 1002–04 (restoration damages were appropriate where a negligently caused fire destroyed vegetation on the plaintiff's property); *Burley v. Burlington N. & Santa Fe Ry. Co.*, 273 P.3d 825, 827–29 (Mont. 2012) (restoration damages were appropriate where toxic pollutants migrated to the plaintiffs' properties); *McEwen*, 291 P.3d at 1258–60 (restoration damages were appropriate where water pumped from natural gas wells was dumped into the plaintiffs' pond). The Court concludes, however, that Plaintiffs pursuit of restoration damages would be proper under the facts alleged.

GID's motion ignores the fact that the issue of whether a party is entitled to restoration damages remains for the jury to decide. The Court should not grant summary judgment on the availability of restoration damages where a party demonstrates sufficient evidence for a jury to find both a temporary injury and personal reasons for restoration. *Lampi*, 261 P.3d at 1008. Plaintiffs have established a genuine issue as to the temporary nature of the injury.

"An injury qualifies as temporary if the tortfeasor could restore the destroyed property to substantially the condition in which it existed before the injury." *Lampi*, 261 P.3d at 1006. The Court already has determined that Defendants' release of water into the WCFC in the spring and fall constitutes a continuing tort. (*See* Doc. 155.) The Court also found in that same order that the harm caused by Defendants is temporary because "such harm easily could be abated if the defendant ceased such conduct." (*Id.* at 9.) The running of the WCFC undisputedly causes erosion and sedimentation. A decision to cease running the WCFC, lowering the flow rate of the WCFC, or installing erosion control measures could abate the harm.

Plaintiffs have established a genuine issue as to the element of personal reasons. The Montana Supreme Court has rejected the argument that plaintiffs must show a genuine intent to restore property to recover restoration damages. *Lampi*, 261 P.3d at 1006. The Montana Supreme Court also has rejected the argument that plaintiffs must demonstrate that their personal reason for restoring the property must prove objectively reasonable. *McEwen*, 291 P.3d at 1263. Plaintiffs have testified in depositions that they do not plan to sell their land, that they would like to see the erosion and sedimentation repaired, and that they would like to pass the land to the next generations. (Doc. 191, ¶¶ 57–58.)

5

The Montana Supreme Court has determined that similar testimony represents a sufficient showing of personal reasons to support an award of restoration damages. *McEwen*, 291 P.3d at 1262–63 (landowners testified that ranching represents their way of life, that they live and work on the ranch, that have a duty to maintain the condition of their property for future generations, and that they intend to pass their property to their children so that their children can continue to ranch). Plaintiffs should be permitted to seek to recover restoration damages to restore the property from the finder of fact. The award of restoration damages remains ultimately a question for the jury. The recoverable damages already prove limited to the damage suffered in the limitations period preceding the suit. (Doc. 68; Doc. 229.)

"The trier of fact must determine whether . . . abatement would be reasonable under the circumstances. Reasonableness generally presents a question of fact for the trier of fact to weigh the evidence and judge the credibility of the witnesses." *Burley*, 273 P.3d at 842. To the extent that GID seeks a determination about the reasonableness of the restoration plan proposed by Plaintiffs' expert, a motion for summary judgment represents an inappropriate mechanism for such a determination. (*See* Doc. 152 at 10–12.); *Burley*, 273 P.3d at 842.

**II.    FISD's Motion for Partial Summary Judgment Regarding the Settlement Agreement between FSID and GID**

FSID argues that the Settlement Agreement between GID and FSID prevents Plaintiffs from recovering damages from FSID. (Doc. 158 at 2–3.) FSID argues that the Settlement Agreement precludes them from liability for damages under four theories. (*Id.* at 3.) FSID argues first that FSID has not paid GID for any operation or maintenance costs of the WCFC since the Settlement Agreement was created. (*Id.* at 8.) Plaintiffs cannot claim damages against FSID under the Settlement Agreement, therefore, because the agreement has never been put in place. (*Id.*) FSID argues second that the Settlement Agreement specifies that GID stands solely responsible for the operation and maintenance of the WCFC. (*Id.* at 8–9.) FSID argues third that they are not liable for any out-of-pocket costs related to or arising from the WCFC. (*Id.* at 9–11.) FSID contends finally that Plaintiffs are not third-party beneficiaries to the Settlement Agreement, and, therefore, cannot enforce the Settlement Agreement. (*Id.* at 11–12.) The Court declines to grant summary judgment on this issue.

State law governs contract interpretation. *Matter of Beverly Hills Bancorp*, 649 F.2d 1329, 1332 (9th Cir. 1981). In Montana, a settlement agreement should be enforced "like any other contract." *In re Marriage of Mease*, 92 P.3d 1148, 1158 (Mont. 2004) (internal citation omitted). Contract interpretation "is a question of law for the court to decide." *Ophus v. Fritz*, 11 P.3d 1192, 1195 (Mont. 2000) (internal citation omitted). A court should interpret a contract's language according to the

7

plain ordinary meaning. *Id.* at 1196. A contract is binding when all parts of the contract are complete and certain. *Junkermier, Clark, Campanella, Stevens, P.C. v. Alborn, Uithoven, Riekenberg, P.C.*, 380 P.3d 747, 755 (Mont. 2016). A contract is not binding when parts are left to conjecture or surmise. *Id.* When the language "is clear and unambiguous and . . . susceptible to only one interpretation, the duty of the court is to apply the language as written." *Ophus*, 11 P.3d at 1195. If the language "is reasonably subject to two different interpretations," then it is ambiguous. *Id.* Summary judgment proves inappropriate if a contract is ambiguous. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coop.*, 164 P.3d 851, 857 (Mont. 2007).

The Court finds, as a threshold matter, that both parties executed the Settlement Agreement between FSID and GID. Representatives of FSID and GID signed the Settlement Agreement. (*See* Doc 159–6 at 12–16.) FSID bases its motion on Article V(G) of the Settlement Agreement. Article V(G) states, in part:

> In no event shall the In-Kind Contribution of Fort Shaw exceed 17% of the total costs of the capital repair, replacement, or other work required nor shall Fort Shaw ever be liable or responsible for any monetary cost, including all out-of-pocket costs, associated with any capital repair, capital replacement, or other work required on or otherwise related to or arising out of the Feeder Canal.

The Court determines it to be improper to grant summary judgment for FSID. Article V(G) says nothing directly, and nowhere else in the contract does it say anything,

about FSID's liability to third-party claims for FSID's own negligence. (Doc. 159–6.)

"[C]ontractual provisions that indemnify a party for its own negligence must be clear and unequivocal to be enforceable." *United Nat. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1267 (Mont. 2009) (quoting *Slater v. Cent. Plumbing & Heating Co.*, 912 P.2d 780, 782 (1996) (internal quotations omitted). The Montana Supreme Court interpreted indemnity provisions in the contracts in *United Nat. Ins. Co.* and *Slater*. The Montana Supreme Court determined that the indemnity provisions were not "clear and unequivocal" in both cases. 214 P.3d at 1268; 912 P.2d at 782–83.

The Settlement Agreement between FSID and GID contains no indemnity provision. (*See* Doc. 159–6.) Summary judgment would be improper without an indemnity provision because it would require the Court to draw inferences about the meaning of the contract—a task properly undertaken by the fact finder. The Court finds no "clear and unequivocal" intent on the parties to the Settlement Agreement to support a claim to indemnification. *See United Nat. Ins. Co.*, 214 P.3d at 1268; *Slater*, 912 P.2d at 782–83.

The Montana Supreme Court's analysis in *Corp. Air v. Edwards Jet Ctr.* proves instructive. 190 P.3d 1111 (Mont. 2008). *Corp. Air* involved a contract to purchase an aircraft and the timing and extent of the purchaser's right to inspect the

9

aircraft. *Id.* at 1121–22. The Montana state district court granted summary judgment in favor of the seller. *Id.* at 1124. The Montana Supreme Court reversed. *Id.* The Montana Supreme Court reasoned the ambiguous provisions in the contract regarding the timing and extent for the purchaser to inspect the aircraft were susceptible to two reasonable interpretations. *Id.*

The Settlement Agreement between FSID and GID does not preclude FSID from liability for Plaintiffs' claims. Plaintiffs allege, among other claims, that FSID was negligent in operating, controlling, and maintaining the WCFC. (Doc. 5, ¶¶ 26–30.) The Settlement Agreement is devoid of language that would preclude FSID from liability for its own negligence. (*See* Doc. 159-6.)

Article V(G) of the Settlement Agreement remains susceptible to multiple reasonable interpretations similar to the contract provisions in *Corp. Air*. The Settlement Agreement's narrow language focuses on FSID's monetary costs related to capital repair, replacement, or other work on the WCFC. (Doc. 159-6 at 7–9.) The Settlement Agreement fails to define the terms "cost" and "work." FSID contends that "costs" and "work," as referenced in Article V(G), include liability for third-party claims. (Doc. 158 at 9–11.) Those terms could be interpreted broadly to conceivably include liability for third-party claims. Those terms could just as easily be construed narrowly to conceivably exclude liability for third-party claims. Either assumption indicates that the language within the Settlement Agreement proves far

10

from "clear and unequivocal." *United Nat. Ins. Co.*, 214 P.3d at 1267. Summary judgment would be improper. *Id.*

### III. GID's Motion for Partial Summary Judgment Regarding Recoverable Damages Under the Continuing Tort Doctrine

GID argues that under the continuing tort doctrine Plaintiffs' damages should be limited to the applicable limitation period preceding this action. (Doc. 163 at 3–5.) GID contends that in ruling on Plaintiffs' laches motion, the Court noted that Plaintiffs' recovery was limited to damages accruing within the statutory period preceding the commencement of the action. (*Id.* at 6–8; Doc. 155 at 14.) Plaintiffs should thus be limited to damages for five years before their action filing and prohibited from seeking prospective damages. (Doc. 163 at 7–8.) Plaintiffs do not directly disagree with GID. (Doc. 207.) Plaintiffs argue instead that the statute of limitations cap does not apply to restoration damages. (*Id.*) GID argues in their reply that the Court would be creating a new law contrary to the law of Montana, a restoration damage carve out, by declining to limit the damages to the statutory period immediately preceding the commencement of the action. (Doc. 223.)

The Court will entertain GID's motion in a limited scope. The Court has already addressed the issue of a statutory damages cap. (Doc. 68; Doc 229.) The Court limited damages under Mont. Code Ann. § 2-9-108(1) to $3 million per year per irrigation district. (Doc. 68; Doc. 229.)

11

"[A]pplication of the continuing tort doctrine allows recovery of damages incurred during the statutory period immediately preceding the filing of the complaint." *Christian v. Atl. Richfield Co.*, 358 P.3d 131, 149 (Mont. 2015) (citing *Graveley Ranch v. Scherping*, 782 P.2d 371, 373 (Mont. 1989). The Montana Supreme Court in *Christian* determined that the applicable statute of limitations that applied to the plaintiffs' claims under the continuing tort doctrine was the longer of the statutes of limitations. *Christian*, 358 P.3d at 152. As a result, the Montana state district court "erred in applying the two-year statute of limitations found in § 27–2–211, MCA, given the statutory provisions of § 27–1–318, MCA, limiting recovery to the five-year period preceding commencement of the action." *Christian*, 358 P.3d at 152.

Plaintiffs allege various continuing torts with different statutes of limitations. (Doc. 5, ¶¶ 26 – 60.) Both parties agree the longest statute of limitations applicable to Plaintiffs' claims is five years for Plaintiffs' wrongful occupation claim. (Doc. 163 at 6–8; Doc. 207 at 7–8.) The Court will grant GID's motion for summary judgment for the limited determination that under the continuing tort doctrine, Plaintiffs' claims are limited to the five-year statute of limitations period immediately preceding the commencement of Plaintiffs' action. *Christian*, 358 P.3d at 152.

The Court disagrees with GID's restoration damage carve-out argument. (Doc. 223.) GID relies predominately on *Nelson v. C&C Plywood Corp.* to support this theory. 456 P.2d 314 (Mont. 1970); (Doc. 223 at 4–5.) The plaintiffs in *Nelson* sought restoration damages for the pollution of a well that the plaintiffs claimed was a continuing and temporary nuisance. *Nelson*, 456 P.2d at 315–17. The Montana state district court instructed the jury that proper damages were the "cost to the plaintiffs of restoring or replacing" the property. *Id.* at 325. The Montana Supreme Court determined that the Montana state district court had erred in not instructing the jury that the recovery period was limited to the statute of limitations period. *Id.* at 325. GID's reliance on *Nelson* is misplaced because the case law has developed post-*Nelson*.

GID asserts the Montana Supreme Court chose not to create a restoration damage carve-out in *Sunburst* and its progeny, most notably *Christian*. (Doc. 223 at 6–7.) GID fails to acknowledge that the Montana Supreme Court declined to adopt such a carve-out because restoration damages generally present an issue for the trier of fact. *Christian*, 258 P.3d at 149 (noting "that the issue before us is limited to the statute of limitations, we need not further address the question of available damages."); *Lampi*, 261 P.3d at 1008 ("A trial court should grant summary judgment to establish restoration damages as the appropriate measure of damages if reasonable minds could not differ as to whether a temporary injury and reasons personal exist.")

13

(internal citation omitted); *McEwen*, 291 P.3d ("The availability of restoration damages depends, however, on the existence of certain facts . . . A fact-finder must resolve any genuine issues of material fact as to the existence of these two predicate facts. This factual finding guides the court in determining the proper measure of damages.") (internal citations omitted).

The Court already has addressed the argument that Plaintiffs have established a genuine issue of material fact regarding whether the damages are reasonably abatable. *Supra* at 2–6. The Court finds GID's motion improper to the extent GID seeks to limit restoration damages. *Lampi*, 261 P.3d at 1008; *see also Christian*, 358 P.3d at 146–47 ("We later noted that although reasonable abatability is a jury question, [t]he district court retains the ability to grant summary judgment where the plaintiff fails to establish a genuine issue of fact.") (internal citation and quotations omitted).

## CONCLUSION

The Court denies GID's motion for summary judgment regarding the availability of restoration damages. Plaintiffs have shown that a genuine issue of material fact exists regarding the temporary injury and personal reasons for restoration. The Court denies FSID's motion for summary judgment regarding whether the Settlement Agreement between FSID and GID precludes FSID from liability. The Settlement Agreement remains silent on the issue of third-party

liability and is susceptible to multiple reasonable interpretations. Summary judgment would be improper. The Court will grant GID's motion for summary judgment regarding recoverable damages for the limited scope that Plaintiffs' claims are subject to the five-year statute of limitations immediately preceding the commencement of Plaintiffs' action. The Court denies GID's motion for summary judgment regarding recoverable damages to the extent it seeks to preclude restoration damages.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. GID's Motion for Partial Summary Judgment Regarding Restoration Damages (Doc. 151) is **DENIED**.

2. FSID's Motion for Summary Judgment Regarding the Settlement Agreement between FSID and GID (Doc. 157) is **DENIED**.

3. GID's Motion for Partial Summary Judgment Regarding Recoverable Damages under the Continuing Tort Doctrine (Doc. 162.) is **GRANTED in part.**

DATED this 20th day of November, 2024.

_____
Brian Morris, Chief District Judge
United States District Court