IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LLOYD and DANIELLE NEAL, JAMES P. TROY, and DAVID M. SABATO and MITZI B. SABATO as trustees of SABATO DAVID M AND SABATO MITZI B 2017 REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>GREENFIELDS IRRIGATION DISTRICT, FORT SHAW IRRIGATION DISTRICT, UNITED STATES, and DOES A-E,<br><br>Defendants. | Cause No. CV-21-106-GF-BMM<br><br>ORDER |

## INTRODUCTION

The Court addresses two outstanding motions in limine. Defendant Greenfields Irrigation District ("GID") filed a motion in limine on seven issues. (Doc. 175.) Plaintiffs oppose that motion. (Doc. 209.) Plaintiffs filed a motion in limine on four issues. (Doc. 192.) GID and the Bureau of Reclamation ("BOR") oppose that motion. (Doc. 215; Doc. 227.) The Court held a hearing on the motions on October 2, 2024. (Doc. 248.)

## BACKGROUND

1

The Court previously has recited the factual background in this case at length. *Neal et al. v. Greenfields Irrigation Dist. et al.*, 2024 WL 4652942 (D. Mont. Nov. 1, 2024); *Neal et al. v. Greenfields Irrigation Dist. et al.*, 2024 WL 2818389 (D. Mont. June 3, 2024). The Court will not repeat here the factual background giving rise to this litigation.

## STANDARD OF REVIEW

Motions in limine serve as procedural mechanisms "to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The decision on a motion in limine is committed to the district court's discretion, including the decision of whether to reserve ruling until trial. *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). A motion in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF R.R. v. Quad City Testing Lab., Inc.*, CV-07-170-BLG-RFC, 2010 U.S. Dist. LEXIS 113888, at *1 (D. Mont. Oct. 26, 2010).

A court will grant a motion in limine only if "the evidence is 'inadmissible on all potential grounds.'" *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016) (quoting *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *1). "[D]enial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that

2

without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ducheneaux v. Lower Yellowstone Rural Elec. Ass'n*, No. CV 19-6-BLG-TJC, 2021 U.S. Dist. LEXIS 98985 at *25 (D. Mont. May 25, 2021) (internal quotations omitted).

Evidentiary rulings must be deferred until trial if evidence fails to meet the "inadmissible on all potential grounds standard." *Quad City Testing Lab.*, 2010 U.S. Dist. LEXIS 113888 at *2. To defer rulings on motions in limine allows a court to place "questions of foundation, relevancy and potential prejudice . . . in proper context." *Id.* (internal quotations omitted). A court may alter its ruling on a motion in limine if trial brings to light facts that the court failed to anticipate in its earlier ruling. *Bensimon*, 172 F.3d at 1127.

## DISCUSSION

### I. GID's First Motion in Limine

GID asks the Court to address seven evidentiary issues in its motion. (See Doc. 176.) The Court will address each issue in turn.

#### A. Alleged Property Damage from Natural Weather Events and Water Seepage Conditions that Pre-Date Plaintiffs Acquiring Ownership of their Properties

GID argues that Plaintiffs should be prohibited from presenting evidence concerning damage to Plaintiffs' property that has occurred from natural weather events and water seepage. (Doc. 176 at 3–4.) GID contends such evidence would

3

prejudice them at trial. (*Id.* at 4.) The Court addressed the issue of property damage from natural weather evens and water seepage in a recent order. (Doc. 259.) The Court granted summary judgment for Defendants because Plaintiff Sabato failed to provide a genuine issue of material fact to prevent the application of Mont. Code Ann. § 85-7-2212 to their claims. (*Id.*) The Court finds GID's motion in limine to be moot to the extent that GID seeks to preclude Sabato from offering such evidence.

The summary judgment motion and subsequent order did not address Plaintiffs Neal's or Troy's claims. The Court will reserve ruling on this issue until trial. The Court will limit any evidence related to the condition of Plaintiffs' property to the five years immediately preceding this action. *Infra* at 8. The Court will deny without prejudice GID's motion in limine to this issue. GID remains free to revisit the issue at trial if the evidence supports it.

### B. Whether GID had a role in the Design and Construction of the WCFC and WCFC Improvements

GID argues that the Court should exclude evidence as to whether GID had a role in the original design and construction of the WCFC. (Doc. 176 at 5.) GID contends that no evidence supports the argument that GID designed the Sun River Project improvements and asks that the Court to prohibit Plaintiffs from making such arguments. (*Id.* at 6–7.) Plaintiffs respond that they do attempt to implicate GID in

4

the design and construction of the WCFC. Plaintiffs contend instead that their claims implicate GID for the operation and maintenance of the WCFC. (Doc. 209 at 6.)

The Court will entertain this motion in a limited scope. The Court previously has ruled on the issue of asserting design and construction claims against the United States. (*See* Doc. 42.) The Court will deny GID's motion to the extent GID attempts to establish an empty chair defense. The Court similarly will not allow Plaintiffs to bring evidence regarding GID's involvement in design and construction. The Court notes, however, that some issue of design and construction likely will be relevant at trial to illustrate the operational parameters of the WCFC. The Court notes also that GID's role in operation and maintenance of the WCFC likely will be relevant at trial. The Court will reserve ruling on these subsequent two issues until it deems appropriate in the context of the evidence presented at trial.

### C. Whether Montana Fish Wildlife & Parks Proposes to Implement Plaintiffs' Restoration Plan

GID seeks to exclude evidence that the State of Montana/Montana Fish Wildlife & Parks ("FWP") seeks to implement Plaintiffs' proposed implementation plan. (Doc. 176 at 7-8.) GID relatedly seeks to exclude the use of evidence of the condition of the canal in the FWP/Montana-owned sections as representative of the channel's condition within Plaintiffs' properties. (Doc. 176 at 9.) Plaintiffs respond that they do not anticipate offering the FWP/Montana's proposed restoration plan in

5

their case in chief. (Doc. 209 at 10.) Plaintiffs further assert that they do not intend to misrepresent the conditions of their individual properties. (Id. at 11.)

The Court will reserve ruling on the issue of Montana's/FWP's proposed restoration plan until trial "so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Zrowka v. BNSF Ry. Co.*, 2023 WL 3142465 at *1 (D. Mont. 2023). The Court will grant GID's motion for the limited scope to prohibit Plaintiffs from representing to the jury that the condition of the WCFC in the FWP/Montana-owned sections as representative of the condition of the WCFC on Plaintiffs' properties.

### D. Liability Insurance

GID seeks to exclude evidence as to the existence of liability insurance pursuant to Fed. R. Evid. 411. (Doc. 176 at 11.) Plaintiffs respond that they do not intend to offer liability insurance evidence as proof of negligence or other wrongful conduct. (Doc. 209 at 11.) Plaintiffs ask the Court to allow evidence of liability insurance if GID claims financial constraints preclude the implementation of Plaintiffs' restoration plan at trial. (*Id.* 11–12.)

The Court will grant GID's motion in line with Rule 411 to preclude Plaintiffs' from offering evidence of liability insurance as proof of GID's negligence or other wrongful conduct. The Court will reserve ruling until trial on the use of liability insurance if GID claims financial hardship. The Court reminds the parties

that the reasonableness of the proposed restoration remains an issue for the jury to decide.

### E. Legal Opinions

GID seeks to exclude expert testimony and arguments concerning "legal obligations, restoration obligations, or similar legal matters." (Doc. 176 at 12–13.) Plaintiffs agree that experts cannot offer evidence of ultimate legal issues. (Doc. 209 at 12.) Expert testimony regarding an ultimate issue in the case "is not per se improper." *Hangarter v. Provident Life Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotations omitted). An expert's testimony as to legal conclusions would be improper. Expert testimony on an ultimate issue of law invades the province of the jury and proves inadmissible. *Nationwide Transp. Fin. V. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

The Court will grant GID's motion to the limited scope that it seeks to preclude Plaintiffs' expert from giving opinions on an ultimate issue of law. The Court reminds GID that such a ruling would be reciprocal. The Court will reserve ruling until trial on GID's motion to the extent GID seeks to preclude other opinions from Plaintiffs' expert.

### F. Condition of the Property from more than Five Years Before the Filing of the Action

GID seeks to exclude evidence and argument regarding conditions or harms occurring more than five years before the filing of the action. (Doc. 176 at 13.) Plaintiffs contend that the damage restriction GID seeks does not apply to restoration damages. (Doc. 209 at 13.) The Court will grant GID's motion in a limited scope.

The Court addressed this issue in its recent order on partial summary judgment. (*See* Doc. 261.) The Court will not reanalyze the issue here. Plaintiffs' claims are subject to the five-year statute of limitations immediately preceding the commencement of Plaintiffs' action. (*Id.*) The issue of restoration damages remains a question for the jury. (*Id.*)

The Court notes that some evidence related to the condition of the WCFC more than five years immediately before the commencement of this action may be relevant to inform the operational parameters of the WCFC. The Court will reserve ruling on that issue until trial.

### G. Golden Rule

GID seeks to prevent Plaintiffs from invoking "the golden rule" or asking the jury to place themselves in Plaintiffs' shoes (Doc. 176 at 14.) Plaintiffs agree not to make "golden rule" arguments. (Doc. 209 at 13.) The Court will grant GID's motion and notes that the restriction would be reciprocal.

## II.   Plaintiffs' Motion in Limine

8

Plaintiffs ask the Court to address four evidentiary issues. The Court has addressed the issues of design and construction of the WCFC and insurance coverage above. *Supra* at 4–5, 6–7.

### A. Opinions of United States's Employees

Plaintiffs argue that testimony by employees of the United States regarding Defendants' performance relative to the WCFC should be excluded because the testimony falls under Rule 702 and Defendants failed to disclose proposed experts under Rule 30(b)(6). (Doc. 193 at 7–8.) Plaintiffs further contend that Defendants could join the United States for the limited scope of determining contractual rights between the two. (*Id.* at 8–9.) The testimony that GID elicited during the United States's deposition exceeded that scope and seeks to exonerate Defendants from potential liability. (*Id.*)

BOR employees have direct and personal knowledge regarding the operation and maintenance of the WCFC. The Court will allow BOR employees to testify as lay witnesses pursuant to Rule 701. A lay witness may provide opinion testimony limited to "opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [Testimony by Experts]." Fed. R. Evid. 701. "The admissibility of lay opinion testimony under Rule 701 is

committed to the sound discretion of the trial judge." *Nationwide Transp. Fin. v. Cass Info. Sys. Inc.,* 523 F.3d 1051, 1058 (9th Cir. 2008) (*quoting United States v. Yazzie,* 976 F.2d 1252, 1255 (9th Cir. 1992)).

Courts in the District of Montana generally allow lay witness testimony about industry practice by employees based on familiarity and experience in the industry. *See e.g. BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, 2010 WL 3866726 at *1–2 (D. Mont. Sept. 27, 2010) (allowing BNSF employees to testify on issues related to personal knowledge and observations in their role as employees); *United States v. Casher*, 2020 WL 2557849 at *5 (D. Mont. May 20, 2020) (allowing testimony from banking employees "based on knowledge they gained through their employment").

The Court will grant Plaintiffs' motion for the limited scope to prevent BOR employees from offering testimony that exonerates Defendants from liability. BOR employees will be allowed to testify as lay witnesses regarding their personal knowledge about the operation and maintenance of the WCFC. The Court will reserve until trial any additional evidentiary ruling regarding the testimony of BOR employees.

### B. Coming to the Nuisance

Plaintiffs asks the Court to prohibit Defendants' twelfth affirmative defense of "coming to the nuisance." (Doc. 193 at 10–13.) Plaintiffs contend that Montana has not recognized this defense in the context of restoration damages claims and that

knowledge of the nuisance would be relevant only in the context of permanent injury. (*Id.*) Plaintiffs argue that knowledge of the nuisance would be irrelevant for the type of abatable, temporary injuries that they assert. (*Id.* at 13.) A review of the case law proves instructive. Plaintiffs rely predominantly on four cases to argue that coming to the nuisance does not provide a valid defense under Montana law.

The plaintiffs in *Gravely Ranch v. Scherping* sued the adjoining landowner for the death of several cattle. 782 P.2d 371, 372 (Mont. 1989). The plaintiffs alleged that the defendant negligently left lead acid batteries exposed on the property that caused the lead poisoning and death of the plaintiff's cattle. *Id.* The Montana Supreme Court did not address the issue of coming to the nuisance. The plaintiff learned of the lead exposure after the animals had died and had been tested. *Id.* The Montana Supreme Court reasoned that the plaintiffs were permitted to pursue a continuing tort claim even though the plaintiff was aware of cause of the harm—the batteries. *Id* at 373–75.

*Sunburst School Dist. No. 2 v. Texaco, Inc.* involved the leaking of gasoline from an oil refinery into the groundwater that migrated underneath the town of Sunburst, Montana. 165 P.3d 1079, 1083–86 (Mont. 2007). The Montana Supreme Court did not address the question of whether the injured landowners had acquired their property with knowledge of the refinery operations. *Burley v. Burlington N. & Santa Fe Ry. Co* involved the release of toxic chemicals by the railroad in

11

Livingston, Montana. 273 P.3d 825, 827–29 (Mont. 2012). The chemicals migrated underground to the surrounding properties. *Id.* The Montana Supreme Court did not analyze whether landowners acquired their property with knowledge of the of the railroad operations.

Finally, *Christian v. Atlantic Richfield Co.* involved arsenic pollution from the operation of smelters in Anaconda, Montana. 358 P.3d 131, 137–40 (Mont. 2015). The arsenic pollution from the Anaconda smelters had been well-known. *Id.* The plaintiffs alleged several torts—identical to the torts in this case—related to the arsenic pollution. *Id.* The Montana Supreme Court engaged in an in-depth analysis regarding the plaintiffs' knowledge of prior torts with respect to the continuing tort doctrine and restoration damages. *Id.* at 139–47. The Montana Supreme Court did not address the potential application of the coming to the nuisance doctrine.

Plaintiffs also cite several out of district decisions to argue that the coming to the nuisance doctrine should not be a valid defense to their claims. (Doc. 193 at 10.) The Court finds these cases unpersuasive to support an outright bar to the jury's consideration of the coming to the nuisance defense. For example, the district court in *Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 983 F. Supp. 360, 364 (W.D.N.Y. 1997), concluded that "knowledge of preexisting contamination, if proven, *may be a factor* to be considered by the jury in determining damages regarding the Adjacent Properties." (Emphasis added); *see also Patrick v. Sharon Steel Corp.*, 549 F. Supp.

12

1259, 1267–68 (N.D.W. Va. 1982) (rejecting coming to the nuisance as an "absolute defense" in the context of air and water pollution because people often do not choose where they live.) (internal citation omitted); *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 508 (Me. 1996) (recognizing that coming to the nuisance does not provide a "complete" defense in a nuisance action) (internal citation omitted); *Kellogg v. Vill. of Viola*, 227 N.W.2d 55, 58 (Wis. 1975) (noting that "coming to the nuisance may properly be considered while weighing the equities in an abatement action").

When a "state's highest court has not decided an issue, that task of the federal courts is to predict how the state high court would resolve it." *Id.* at *2 (quoting *Ticknor v. Choice Hotels Intern, Inc.,* 256 F.3d 931, 939 (9th Cir. 2001) (internal quotations and citations omitted). The Montana Supreme Court has not explicitly said coming to the nuisance provides no valid defense under Montana law. *Wilhelm v. City of Great Falls*, 685 P.2d 350, 352 (Mont. 1984) ("Appellants argue that respondents acted negligently in locating their house one mile from the dump. Because the parties failed to raise the issue on appeal, we will not consider the theories of assumption of risk or coming to the nuisance.").

The Court remains doubtful of Plaintiffs' argument that a plaintiff's knowledge of the harm proves entirely irrelevant when injuries are temporary. The facts of the Montana cases cited by Plaintiffs fundamentally differ from this case. The harms in those cases typically involved unseen contaminants. The harms in this

13

case are caused two occurrences per year—when water is released into the WCFC—that are open and obvious. Plaintiffs also knew that Defendants possessed an easement for the operation of the WCFC on their property at the time of their purchases. (*See* Doc. 156 at 3.)

The Court declines to establish an outright bar of coming to the nuisance defense. The Court notes that aspects of such a defense likely would be relevant at trial related to Plaintiffs' nuisance claim. Such evidence may include the impact of the WCFC on Plaintiffs' use and enjoyment of their properties, the applicability of nuisance under Mont. Code Ann. § 27-30-101(2), arguments regarding the economic harms Plaintiffs have suffered, and GID's estoppel defense. (Doc. 215 at 13–17.) In other words, Plaintiffs knowledge of the operation of the WCFC and the condition of their properties at the time of their purchases "may be a factor" for the jury to consider. *Seneca Meadows, Inc.*, 983 F. Supp. at 364. The Court will reserve a final ruling on such issues until it has a chance to consider the evidence presented at trial.

## CONCLUSION

The Court will grant GID's motion in limine in part and reserve ruling on some of the issues until trial. The Court similarly will grant Plaintiffs' motion in limine and reserve ruling on some of the issues until trial.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. GID's Motion in Limine (Doc. 175) is **GRANTED in part**:

   - The Court denies without prejudice GID's motion in limine regarding alleged property damage from natural weather events and water seepage conditions that pre-date Plaintiffs acquiring ownership of their properties.

   - The Court denies GID's motion regarding GID's role in the design and construction of the WCFC and WCFC improvement. The Court reserves ruling on the design on design and construction evidence to the extent it is necessary to illustrate the operational parameters of the WCFC and GID's role in the operation and maintenance of the WCFC until trial.

   - The Court grants GID's motion regarding FWP/Montana endorsement of Plaintiffs' restoration plan for the limited scope to prohibit Plaintiffs from representing to the jury that the condition of the WCFC in the FWP/Montana-owned sections as representative of the condition of the WCFC on Plaintiffs' properties. The Court reserves ruling on any other issues related to this until trial.

   - The Court grants GID's motion regarding liability insurance in line with Rule 411 to preclude Plaintiffs' from offering evidence of liability insurance as proof of GID's negligence or other wrongful

conduct. The Court reserves ruling until trial on the use of liability insurance if GID claims financial hardship.

- The Court grants GID's motion regarding legal opinions to the limited scope that it seeks to preclude Plaintiffs' expert from giving opinions on an ultimate issue of law.

- The Court grants GID's motion regarding the condition of Plaintiffs property from more than five years before filing the action. The issue of restoration damages remains a question for the jury. The Court reserves ruling on the issue that some evidence related to the condition of the WCFC more than five years immediately before the commencement of this action may be relevant to inform the operational parameters of the WCFC until trial.

- The Court grants GID's motion seeking Plaintiffs from invoking "the golden rule."

2. Plaintiffs' Motion in Limine (Doc. 192.) is **GRANTED in part:**

   - The Court denies Plaintiffs' motion regarding the design and construction of the WCFC in line with its Order regarding GID's motion, Doc. 175, above.

- The Court grants Plaintiffs' motion regarding precluding testimony of United States's employees for the limited scope to prevent BOR employees from offering testimony that exonerates Defendants from liability. The Court reserves ruling on United States's employee's testimony as lay witnesses until trial.

- The Court reserves ruling on the issue of "coming to the nuisance" as a defense until trial.

- The Court denies Plaintiffs' motion regarding insurance coverage in line with its Order regarding GID's motion, Doc. 175, above.

3. DATED this 25th day of November, 2024.

_____
Brian Morris, Chief District Judge
United States District Court